UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES WALTER WILLIAMSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-4539** |
| **HERCULES OFFSHORE, INC.** | **SECTION "K"(1)** |

### ORDER AND OPINION

Before the Court is the "Motion for Partial Summary Judgment" filed on behalf of defendant Hercules Offshore, Inc. (Doc. 27). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, DENIES the motion.

### BACKGROUND

James Williamson, an employee of Hercules Offshore, Inc. ("Hercules") worked as an electrician aboard the jack-up rig HERCULES 260, owned by Hercules. On November 18, 2008, Mr. Williamson was assigned to check the breaker that controlled the brake popper. Mr. Williamson completed a Job Safety Analysis ("JSA") form identifying his assignment as "Check Popping Brakes" and "Check Voltage on Poping [sic] Brake Breaker." The "Sequence of Basic Job Steps" portion of the JSA lists the following steps:

- Gather & Inspect Tools
- Open Door to Breaker Cabinet
- Make voltage Readings
- Close and Lock Door Back on Cabinet
- Stow all Tools in Proper Place.

Doc. 27-5, Exhibit 2. Mr. Williamson also completed a Permit to Work ("PTW") which in the section designated as "Work Description (brief)" states "Testing breaker for brake popper" and

indicating that it was a Cold Work Permit. Cary Smith, the Offshore Installation Manager ("OIM") for the rig and Don Stringfellow, the rig's Barge Supervisor, two Hercules supervisors signed the JSA and the PTW. There is a dispute as to whether a Cold Work Permit was appropriate given that the circuit in the area in which plaintiff was working had not been deenergized.

While wearing protective rubber electric lineman's gloves, Mr. Williamson used a voltage meter to check the voltage on the front of the breaker and was able to read voltage. Mr Williamson then removed the lineman's gloves in order to check the wire connections on the back of the breaker to determine if they were loose. Because the back of the breaker was in close proximity to another structure, there was limited space within which to check whether the wire connections were loose. While attempting to check the wire connections on the back of the breaker, Mr. Williamson received an electric shock. He alleges that he sustained various injuries as a result of the electric shock.

Thereafter, Mr. Williamson filed suit against Hercules alleging claims for negligence under the Jones Act, 46 U.S.C. Section 30104 and for unseaworthiness under the general maritime law. Defendant seeks summary judgment on all of plaintiff's claims contending that the rig was seaworthy and that plaintiff's negligence was the sole cause of the accident.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record

"which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

## LAW AND ANALYSIS

"A seaman is entitled to recovery under the Jones Act, [], if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). A Jones Act employer owes its employees an ordinary duty of care, *i.e.,* the care that a "reasonable person" of "ordinary prudence" would exercise." *Id.* at 334-35.

*Gautreaux* also addressed the applicable standard for considering the contributory negligence of a Jones Act seaman stating:

> A seaman . . . is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. The reasonable person standard, therefore, and a Jones Act negligence action becomes one of the reasonable *seamen* in like circumstances."

*Id.* at 229.

However, with respect to causation under the Jones Act, "the standard is a 'slight' one, allowing an injured employee to recover if the employer's negligence 'played any role, even the slightest, in producing the injury or death for which damages are sought.'" *Stiward v. United States*, 551 F. Supp. 478, 492 (E.D. La. 2008), quoting *Gautreaux,* 107 F.3d at 335. In a Jones Act case, the necessary causal connection requires more than simple "but for" cause, instead "[t]he negligence must be 'a legal cause' of the injury." *Gavagan v. United States*, 955 F.2d 1016, 1019-20 (5th Cir. 1992). However, it is well established that "comparative negligence bars an injured party from recovering for damages sustained as a result of his own fault" to the extent that his fault is the proximate cause of his injury. *Boudreaux v. United States*, 280 F.3d 461, 466 (5th Cir. 2002).

In general, defendant urges that the plaintiff is a well trained electrician who was the head electrical employee aboard the rig, that he exceeded the approved scope of his assignment by attempting to check the wire connections on the back of the breaker, and that he breached his duty to perform the job in the safest manner possible by failing to wear insulated gloves when attempting to check the wire connections on the back of the breaker. Based on those contentions, defendant urges that Mr. Williamson's own negligence was the sole proximate cause of plaintiff being shocked, and that plaintiff has not raised a genuine issue of material fact with respect to defendant's negligence. Viewing the evidence, and the factual inferences drawn from the evidence, in the record

4

in light most favorable to plaintiff, the Court cannot conclude that no reasonable jury could conclude that defendant was not negligent to some degree. Plaintiff testified in his deposition that the breaker at issue was old and that it had not been checked or used before. Deposition of James Williamson, p. 70-71, 101 (Doc. 27-4). When questioned if he was "asked to make sure that the breaker was working[]" plaintiff responded "[y]es, sir." *Id.* at 70. Defense counsel asked plaintiff "[s]o you could have told if [the breaker] was just working by checking whether you had power to each receptacle once the breaker was turned on, right?" *Id.* Plaintiff responded "[n]o, sir. You can't – I could have done that but that wouldn't have been the right way. You have to check the breaker, so we have to –we never used it before. It need to be checked for maintenance." *Id.* He also testified that "whenever I check the breaker, . . . I check for loose connections and stuff like that when I pulled the gloves off, shaking the wires." *Id.* at p. 99. Plaintiff also testified that he "was told to check the breaker." *Id.* at 133. The following colloquy addresses the scope of plaintiff's work assignment:

> Q. Were you specifically asked to check behind the breaker and make sure the wires weren't loose?
> A. Yes, sir. That's standard. check voltage, connections, everything for the breaker, yes, sir.
> Q. Okay. but to be real clear, you were asked only to check the breaker right?
> A. Yes, sir.
> Q. What you're telling me is that your belief is that included in that generic request would always be check the connections on the back?
> A. It's not my belief. That's a fact. That's just the way it is. You have to check everything to keep maintenance on these things.

*Id.* at 132. Plaintiff's testimony creates a genuine issue of material fact as to whether the scope of plaintiff's assignment was the tasks specifically identified on the JSA or whether his assignment also included checking the wire connections for the breaker to determine if they were loose. Resolution of that issue falls within the province of the jury.

There is also a genuine issue of material fact as to whether the defendant was negligent concerning the placement of the breaker. There is evidence that the breaker was located very low, maybe only 10 - 12 inches high, and that plaintiff had to lay down to do the work. *Id.* at 103-104. Additionally, plaintiff testified that he could not get into the area where the wire connections were wearing the gloves. Doc. 27-4, Deposition of James Williamson, Jr., p. 115. Specifically Mr. Williamson testified "[t]he distance right here. I couldn't get in there with those gloves. I mean, there's no way between that bus and them wires." *Id.* He also stated that "there wasn't no room to get in there." *Id.* at 116. Later Mr. Williamson clarified his testimony stating "[y]ou could get your hand in there but you couldn't do the job as far as getting back there, because once you get in the side right beside the breaker, then you got your high voltage bus bar which is directly behind the breaker." *Id.* at 119. Thus, there is a genuine issue of material fact as to whether the location of the breaker, including the small space within which there was to check the wiring connections, constitutes negligence on the part of the defendant.

Moreover, there is evidence that the insulated gloves are bulky and that the proper size gloves for plaintiff were not available aboard the rig. There is also a genuine issue of material fact concerning whether the task of pulling or wiggling wires to determine whether they are loose can be accomplished wearing insulated gloves. The presence of this and other genuine issues of material fact preclude granting defendant's motion for partial summary judgment on plaintiff's claims of negligence.

## UNSEAWORTHINESS

"To be seaworthy, a vessel and its appurtenances must be reasonably suited for the purpose or use for which they were intended." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th

6

Cir. 1988), citing *Mitchell Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933 (1960).  The duty of a vessel owner to provide a seaworthy vessel is absolute and independent of the Jones Act duty to exercise reasonable care.  *Id*.  In a claim for unseaworthiness, the plaintiff must establish "a causal connection between the injury and the breach of the duty that rendered the vessel unseaworthy."

The same evidence which raises a genuine issue of material fact with respect to the location and configuration of the breaker and the surrounding area creates a genuine issue of material fact as to whether defendant's vessel was seaworthy.  Therefore, defendant is not entitled to partial summary judgment on plaintiff's claims of unseaworthiness.

New Orleans, Louisiana, this 17th  day of January, 2011.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE